UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIRECTORY ASSISTANTS, INC., ) | |
| ) | |
| Plaintifff, ) | CIVIL ACTION NO. 3:11cv00801-MRK |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Healthmart USA, LLC and Gregg ) | |
| Lawrence, ) | |
| ) | |
| Defendant. | |

## SECOND AMENDED COMPLAINT

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because the plaintiff Directory Assistants, Inc. ("DAI") conducts business in this district, the activity about which DAI complains has taken place and is continuing to take place in this district, and DAI has suffered injury in this district.

## THE PARTIES

3. DAI is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located at 500 Winding Brook Drive in Glastonbury, Connecticut.

4. The defendant Healthmart USA, LLC ("Healthmart") is a Tennessee limited liability company with a principal place of business located at 3326 Aspen Grove Road, Suite 270, Franklin, Tennessee. Upon information and belief, Healthmart is a two-member LLC and neither member is a citizen of the State of Connecticut.

5. The defendant Gregg Lawrence ("Lawrence"), is an individual and resident of Tennessee.

## FACTUAL BACKGROUND

### I. Directory Assistants, Inc.'s Business

6. DAI is an advertising consulting agency that specializes in helping businesses advertise more efficiently and economically in yellow page directories.

7. DAI enters into a written consulting agreement with each client.

8. Under its written consulting agreement, DAI agrees to provide advice regarding a client's yellow page directory advertising and educate advertisers how to reduce costs.

9. In exchange, the client agrees that, if the client saves money on its yellow page directory advertising, the client will pay DAI a contingency fee calculated as a percentage of the amount of money the client saves for a two, three, or four year period.

10. DAI's written consulting agreement also addresses the circumstance where a client has pre-existing, independent plans to change its yellow page directory advertising. Under

the written consulting agreement, if a client provides notice of any specific pre-existing plan to reduce costs prior to hiring DAI, then DAI is not entitled to any portion of the savings the client enjoys as a result of its pre-existing plan. The client's pre-existing, independent savings plans must be disclosed prior to contracting and before DAI delivers its cost saving strategies.

11. DAI also provides other services relating to yellow page directory advertising, including dealing directly with yellow page directory companies and their sales personnel on behalf of DAI's clients.

## II. DAI's Business Relationship with HealthMart USA, LLC

12. Healthmart entered into a consulting contract with DAI on March 3, 2008 (the "Contract").

13. Lawrence is the owner of Healthmart and signed the Contract on behalf of Healthmart.

14. A dispute subsequently arose between DAI and Healthmart over the fees due pursuant to the Contract.

15. On February 29, 2009, DAI filed a demand for arbitration with the American Dispute Resolution Center in New Britain, Connecticut (the "Connecticut Arbitration").

16. On March 25, 2009, Healthmart and Lawrence filed a lawsuit against DAI in Tennessee in the Williamson County Chancery Court (the "Tennessee Lawsuit") seeking a declaratory judgment and civil damages.

17. Healthmart and Lawrence obtained a temporary restraining order in the Tennessee Lawsuit preventing the Connecticut Arbitration from proceeding until the Tennessee court could address certain legal issues.

18.  DAI moved to dismiss the Tennessee Lawsuit and, in the alternative, to stay the Tennessee Lawsuit and to compel arbitration. The trial court denied DAI's motion to dismiss, denied DAI's motion to stay, and denied DAI's motion to compel arbitration.

19.  DAI appealed that Tennessee trial court's rulings to the Court of Appeals of Tennessee.

20.  On April 6, 2011, the Court of Appeals of Tennessee reversed the trial court's rulings in the Tennessee Lawsuit, remanded the matter to the trial court to decide whether a condition precedent to arbitration had been satisfied, and ordered Healthmart and Lawrence to pay DAI's costs for the appeal.

### III. Healthmart and Lawrence Posted Defamatory Statements about DAI on the Internet

21.  On or about April 11, 2011, Lawrence posted a message regarding DAI on the web site http://www.ripoffreport.com ("RipOffReport.com") using the IP address 74.249.244.102 and the email address gblawrence@bellsouth.net. On April 11, 2011, the IP address 74.249.244.102 was owned by and/or assigned to Healthmart and/or Lawrence and the email address gblawrence@bellsouth.net was owned by and/or assigned to Lawrence.

22.  Lawrence concealed his identity from the public by identifying himself as "Andrew (Knoxville Tennessee United States of America)" and created a "Report" on RipOffReport.com (the "RipOffReport Post").

23.  The public can access the RipOffReport Post by searching for "Directory Assistants" in the "Search Company" box at the top of the main page of RipOffReport.com.

24. The public can also access the RipOffReport Post through internet search engines by searching for "Directory Assistants."

25. The RipOffReport Post contains DAI's name, business address and telephone number.

26. The RipOffReport Post included the following headline:

**Directory Assistants Inc. David Ford, Dan Cassain Do Not Sign a Contract with this Company Glastonbury, Connecticut**

27. David Ford is DAI's President.

28. Michael Cody is DAI's Vice President.

29. Dan Cassin is a former employee of DAI.

30. The RipOffReport Post includes the following statements:

> Do not sign a contract with this company. Once you sign the contract you are not a customer, but a victim of their contract. They won't help you lower your ad costs. They will only tell you to reduce the size of your ad and when you do or make any changes at all they will charge you exhorbitant [sic] and outrageous fees. Dan C. is the good cop. He looks nice and is professional. Once they get you to sign, then you will be dealing with David Ford who sounds like a mafia kingpin. He will threaten to take you to court if you don't pay exhorbitant [sic] fees. Their contract if full of deceptive devices that work in their favor.

31. Upon information and belief, on April 10, 2011, Lawrence and/or Healthmart also posted the statements that they made in the RipOffReport Post on a separate website http://www.scaminformer.com ("ScamInformer.com"), identifying himself as "USER239330" (the "ScamInformer Posting").

32. On May 10, 2011, DAI received copies of emails sent from a yellow pages publisher to one of DAI's prospective customers in Virginia – Dr. Catherine Fulton. These

emails included links to, among other things, the posts that the Lawrence and/or Healthmart made on RipOffReport.com and ScamInformer.com. Dr. Fulton subsequently refused to do business with Directory Assistants.

33. Another prospective customer in Virginia, Ingram Auto Parts, also declined to do business with Directory Assistants after viewing the RipOffReport Posting and/or the ScamInformer Posting.

34. The emails from the Virginia yellow page publisher also encourage the yellow pages publisher's sales employees to send links to the RipOffReport Posting and the ScamInformer Posting to any customers who discuss the possibility of hiring Directory Assistants. Directory Assistants does not know at this time how many more potential customer and prospective customer relationships have been affected by this conduct.

35. Several other prospective customers have refused to do business with DAI after reading the statements made in the RipOffReport Post and/or the Scam Informer Post.

36. Directory Assistants has spent significant amounts of employee time and money to address the false statements that Lawrence and/or Healthmart made in the RipOffReport Post and/or the Scam Informer Post, monitoring the internet for additional false and misleading posts, hiring consultants to try to minimize the harm caused by the false statements, and preparing this lawsuit to identify the Lawrence and Healthmart, and to investigate the extent of the harm that the Lawrence's and Healthmart's posts have caused.

## FIRST COUNT
### Tortious Interference With Contractual Relationships

37. DAI incorporates the allegation set forth in paragraphs 1-36 of this Complaint.

38. At all relevant times, DAI has maintained contractual relationships with numerous customers across the United States.

39. Upon information and belief, Lawrence and/or Healthmart was aware of one or more of these contractual relationships.

40. Lawrence and/or Healthmart posted false and misleading statements regarding DAI and its employees on the Internet with the intent to interfere with one or more of DAI's existing contractual relationships.

41. Lawrence's and/or Healthmart's interference was tortious because it involved defamatory statements, fraud, misrepresentation, and/or malice.

42. Lawrence's and/or Healthmart's conduct has harmed DAI's reputation and caused DAI to suffer money damages.

43. Lawrence and/or Healthmart's conduct was willful, wanton, and/or malicious and/or in reckless disregard to DAI's rights.

## SECOND COUNT
### Tortious Interference With Business Expectancies

44. DAI incorporates the allegations set forth in paragraphs 1-36 of this Complaint.

45. At all relevant times, DAI has actively solicited additional customers and has had a reasonable prospect of entering into future contractual or otherwise profitable business relationships with various businesses across the United States.

46. Lawrence and/or Healthmart posted false and misleading statements regarding DAI and its employees on the Internet with the intent to interfere with one or more of DAI's prospective business relationships and/or its potential to enter into future business relationships.

47. Lawrence's and/or Healthmart's interference was tortious because it involved defamatory statements, fraud, misrepresentation, and/or malice.

48. Lawrence's and/or Healthmart's conduct has harmed DAI's reputation and caused DAI to suffer money damages.

49. Lawrence and/or Healthmart's conduct was willful, wanton, and/or malicious and/or in reckless disregard to DAI's rights.

### THIRD CLAIM FOR RELIEF
### Permanent Injunction

50. DAI incorporates the allegations set forth in paragraphs 1-49 of this Complaint.

51. As a result of the actions and misrepresentations by Defendant as set forth herein, Directory Assistants is entitled to permanent injunctive relief in the form of an order prohibiting Defendant from making further false or misleading statements regarding Directory Assistants and its officers and employees.

52. As a result of the actions and misrepresentations by Defendant as set forth herein, Directory Assistants is entitled to permanent injunctive relief in the form of an order prohibiting Defendant from making further statements regarding Directory Assistants under an alias.

53. Directory Assistants is likely to suffer irreparable harm in the future without this injunctive relief.

54. Directory Assistants has no adequate remedy at law to compensate for the irreparable harm it is likely to suffer if permanent injunctive relief is not entered in this case.

## FOURTH CLAIM FOR RELIEF
### Defamation

55. DAI incorporates the allegations set forth in paragraphs 1-36 of this Complaint.

56. Lawrence and/or Healthmart published defamatory statements about DAI and/or its officers and/or its employees on the websites www.scaminformer.com and www.ripoffreport.com.

57. Lawrence's and/or Healthmart's false statements have damaged DAI's reputation and have caused DAI to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Directory Assistants prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

1. Monetary damages including, but not limited to, nominal damages, general damages, special damages and actual damages;

2. Punitive damages pursuant to Connecticut common law;

3. Permanent injunctive relief;

4. Attorneys' fees and litigation costs pursuant to Connecticut common law;

5. Interest; and

6. Such other and further relief, in equity and in law, as the Court, in its discretion, may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues triable by jury in this matter.

PLAINTIFF,
**DIRECTORY ASSISTANTS, INC.**

By: _/S/ Brett J. Boskiewicz_ (ct25632)
Frank F. Coulom, Jr. (ct05230)
Brett J. Boskiewicz (ct25632)
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103
Tel:   (860) 275-8200
Fax:   (860) 275-8299
E-mail: fcoulom@rc.com
bboskiewicz@rc.com

## CERTIFICATION

I hereby certify that the Defendant has not appeared and has not been served because his or her true identity remains unknown to Directory Assistants. I further certify I will provide a copy of this motion and the documents filed in support thereof to anyone who contacts me to request them.

/s/   Brett Boskiewicz (ct25632)
Brett Boskiewicz